UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
KAYVAN KAROON, KAMRAN KAROON,           :
Individually and as Administrators of   :
the Estate of MAJID KAROON, and MAHIN   :
D. KAROON,                              :        09 Civ. 6362 (DLC)
                         Plaintiffs,    :
                                        :        OPINION & ORDER
                                        :        ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
              -v-                       :
                                        :
FRANKLIN, WEINRIB, RUDELL & VASSALLO,   :
P.C.,                                   :
                         Defendant.     :
                                        :
----------------------------------------X

APPEARANCES:

For Plaintiffs:

Michael Sukhman, Esq.
Frenkel Sukhman LLP
1 North Broadway, 10th Floor
White Plains, NY 10601

Philip L. Guarino
14 Forest Avenue
Caldwell, NJ 070007

For Defendant:

Marc J. Rachman
Ariel L. Stillman
Davis & Gilbert LLP
1740 Broadway
New York, NY 10019


DENISE COTE, District Judge:

     This action arises from the efforts of defendant Franklin,

Weinrib, Rudell & Vassallo, P.C. ("defendant"), a law firm, to

enforce a twelve-year old judgment against a former client.

That client, now deceased, was the former husband of plaintiff Mahin Karoon and the father of plaintiffs Kayvan Karoon and Kamran Karoon (collectively, the "plaintiffs").  Plaintiffs allege that defendant levied and executed upon two properties in France in violation of New York statutory and common law.  For the following reasons, defendant's motion for summary judgment is granted.

BACKGROUND

The following facts are undisputed.  From May 8, 1997 through to February 3, 1998, defendant represented the late Majid Karoon ("Mr. Karoon") in a divorce action brought by his former wife, plaintiff Mahin Karoon ("Mrs. Karoon"), in New York Supreme Court (the "Matrimonial Action").  At the time Mrs. Karoon sued for divorce, Mr. Karoon owned apartments in London, England, and Paris and Cannes, France (the "London property," "Paris property," and "Cannes property," respectively), among other places.  This action concerns the Paris and Cannes properties.

On April 16, 1997, Mrs. Karoon moved for a temporary restraining order and a preliminary injunction against the disposition of assets by Mr. Karoon in the Matrimonial Action.  On May 12, after defendant had been retained by Mr. Karoon, Mr. and Mrs. Karoon entered into a stipulation (the "May 12, 1997

Stipulation"). The May 12, 1997 Stipulation provided, <u>inter</u> <u>alia</u>, that: (1) a sum of money be placed in an escrow account (the "Escrow Account") to pay certain expenses as stipulated; and (2) the London property be sold and the proceeds deposited in a separate escrow account. The May 12, 1997 Stipulation contains no reference to the Paris or Cannes properties.

On June 23, 1997, Mr. and Mrs. Karoon entered into a second stipulation (the "June 23, 1997 Stipulation"). The June 23, 1997 Stipulation provided, <u>inter</u> <u>alia</u>, that (1) carrying charges on the London, Paris, and Cannes properties would be paid out of Mr. and Mrs. Karoon's joint bank accounts in those cities; and (2) pursuant to the May 12, 1997 Stipulation, proceeds from the sale of the London property would be deposited in a separate escrow account to be used for expenses if the funds in the Escrow Account were exhausted. The June 23, 1997 Stipulation contains no reference to the Paris or Cannes properties being the subject of any escrow account.

On January 6, 1998, following the sale of the London property, Mr. and Mrs. Karoon entered into a third stipulation (the "January 6, 1998 Stipulation"). The January 6, 1998 Stipulation provided that the proceeds from the sale would be held in a joint escrow account during the pendency of the Matrimonial Action. Like the two earlier stipulations, the

January 6, 1998 Stipulation contains no reference to the Paris or Cannes properties being the subject of any escrow account.

On February 3, defendant ceased representation of Mr. Karoon.  At that time, Mr. Karoon owed defendant approximately $102,818 in legal fees and disbursements.  On March 13, defendant moved in the Matrimonial Action for a charging lien against any recovery Mr. Karoon might obtain in the Matrimonial Action.  The motion was granted by a May 11 order, which required the amount of the charging lien to be fixed at a hearing before a special referee on June 25.  Defendant separately filed a plenary action against Mr. Karoon in New York Supreme Court to recover from Mr. Karoon the legal fees he owed (the "Plenary Action").

On June 23, defendant and Mr. Karoon entered into a stipulation of settlement to resolve the charging lien and Plenary Action (the "Legal Fees Stipulation").  The Legal Fees Stipulation was "So Ordered" by the New York court in the Matrimonial Action.  Pursuant to the Legal Fees Stipulation, defendant agreed to discount the amount owed by Mr. Karoon to $85,210 (including $210 in costs) in return for Mr. Karoon confessing judgment in that amount.  Mr. Karoon's confession of judgment was filed with the New York County Clerk's Office on June 24, 1998 as a judgment (the "New York Judgment").

Several provisions of the Legal Fees Stipulation are relevant to this action.  First, paragraph 2(b) provides that Mr. Karoon "shall execute any documents which . . . may be necessary to enforce the judgment in any jurisdiction worldwide, or to enter judgment in any such jurisdiction."  Second, paragraph 4 provides:

> Mr. Karoon acknowledges that [defendant's] rights with respect to the Escrow Accounts shall be determined upon the trial of the Matrimonial Action, and that such rights shall not be prejudiced by this Stipulation.  Accordingly, [defendant] shall not levy against the Escrow Accounts, or disbursements from the Escrow Accounts, to enforce its judgment in the Plenary Action, it being expressly understood that the judgment in the Plenary Action is not intended to affect whatever rights it may have in the Matrimonial Action, including, without limitation, a direction that the funds in the Escrow Accounts be utilized to satisfy all or part of the judgment in the Plenary Action.

(Emphasis added).  And third, paragraph 5 provides:

> In addition to any rights which [defendant] may have as judgment creditor in the Plenary Action, [defendant] shall also have the following rights in the Matrimonial Action: (a) The first $7,500 which is made available to Mr. Karoon for payment of his legal fees from the Escrow Accounts shall be paid to [defendant]; (b) Any sums thereafter made available in the Matrimonial Action for the payment of Mr. Karoon's legal fees, including, without limitation, from the Escrow Accounts, a fee award in his favour and/or the proceeds from the sale of any of the parties' real or personal properties, whether here or abroad, shall be divided in a manner determined by [the court in the Matrimonial Action] between [defendant] and Cox, Buchanan [the law firm that succeeded defendant in representing Mr. Karoon].

(emphasis added).  The Legal Fees Stipulation defines "Escrow Accounts," as used in paragraphs 4 and 5 above, as "certain funds [that] are <u>currently being maintained</u> in the joint names of Cox Buchanan [Mr. Karoon's counsel] and Denise Morner Kranz, one of Mrs. Karoon's attorneys, which accounts are subject to the control of the Court in the Matrimonial Action." (Emphasis added).

In August 1998, defendant learned that Mrs. Karoon had filed court-ordered provisional liens in France to secure her claims against the Cannes and Paris properties in June and August 1997, respectively.  Defendant hired French counsel who filed provisional liens on defendant's behalf on the Cannes and Paris properties.  Defendant's French counsel also commenced proceedings to convert the New York Judgment to a French judgment, and to enforce such judgment against the Cannes and Paris properties.

On January 7, 1999, a French court granted defendant provisional liens on the Paris and Cannes properties in the amount of 480,000 francs, the equivalent of the $85,210 judgment against Mr. Karoon.  Defendant served notice of these liens on Mr. Karoon on January 18.  Mr. Karoon did not bring any proceedings to protest the liens.  On September 1, the French court recognized the validity in France of the New York Judgment, held that it was enforceable in France, and could "be

executed on the whole of the French territory" (the "French
Judgment").  Mr. Karoon did not oppose defendant's application
for recognition of the New York judgment and did not appeal the
French court's decision.  Defendant's liens on the Paris and
Cannes properties became final on February 9 and February 11,
2000, respectively.

Meanwhile, on September 29, 1999, the New York court
overseeing the Matrimonial Action entered a judgment of divorce.
On December 8, Mrs. Karoon filed an affidavit in support of a
motion to revise the divorce judgment (the "December 8, 1999
Affidavit"), in which she affirmed, inter alia, that
"[defendant] has perfected in France its lien arising out of
[Mr. Karoon's] non-payment of legal fees to it and [is] in a
position to foreclose that lien."  Almost a year later on August
3, 2000, a second amended divorce judgment was filed to
facilitate the enforcement of the divorce judgment in France
(the "Second Amended Divorce Judgment").  The Second Amended
Divorce Judgment declared, inter alia, that all marital
property, including the Cannes and Paris properties, was to be
liquidated "without delay" and the proceeds placed in an escrow
account to be subsequently distributed 65 percent to Mrs. Karoon
and 35 percent to Mr. Karoon.

On January 29, 2002, Mr. Karoon filed for bankruptcy in Los
Angeles, California, where he had purportedly established

residence.  In February 2002, Mr. Karoon died intestate in
California and the bankruptcy proceeding was dismissed.  A
probate proceeding was initiated in California.  Plaintiffs
Kayvan and Kamran Karoon are the sole beneficiaries of Mr.
Karoon's estate and have since become administrators of the
estate.  In 2005, defendant received notice of the
administration of Mr. Karoon's estate in California.  On or
about December 19, 2006, defendant filed a claim against Mr.
Karoon's estate for the amounts owed by Mr. Karoon.  Defendant's
claim was rejected.

        On September 1, 2004, the High Court of Paris recognized
the New York Divorce Judgment (the "French Divorce Judgment").
In October, defendant was notified that the French court had
accepted the New York Divorce Judgment.  In 2006, defendant
initiated the legal process in France to force the sale of the
Cannes property.  On June 7, and again on July 7, 2006, notice
was sent in France to all creditors of Mr. Karoon's estate of a
hearing concerning the proposed forced sale of the Cannes
property.  On July 27, plaintiffs filed a complaint against
defendant in France seeking to postpone the sale of the Cannes
property and challenging the legitimacy of defendant's claim.
Plaintiffs argued, inter alia, that: (1) pursuant to the French
Divorce Judgment, Mrs. Karoon owned 65 percent of the Cannes
property, making her a "joint owner," and therefore the property

8

should be divided between the joint owners prior to sale; and
(2) defendant's claim on the Cannes property was invalid because
defendant had failed to litigate its claim in the California
probate proceeding.  After a hearing on September 7, the French
court denied plaintiffs' petition to postpone the sale in a non-
appealable Order dated October 5 (the "October 5, 2006 Order").
On November 30, the Cannes property was sold by public auction
for 860,000 Euros (approximately $1.26 million).  Defendant has
not received any proceeds from this sale, which are currently
being held for distribution in accordance with French law.

On March 9, 2007, plaintiffs' counsel wrote to defendant to
complain that "the existence of the lien on the Paris apartment
was interfering with a pending sale and causing damage to the
Karoon estate and to Mrs. Karoon."  Defendant did not remove the
lien from the Paris property.  In March 2008, plaintiffs'
counsel again wrote to defendant and offered to pay defendant
$85,210 from the proceeds of the sale of the Cannes apartment so
long as the lien on the Paris property was simultaneously
removed.  Again, defendant did not remove the lien.

On October 16, 2008, a French court granted plaintiffs'
request to sell the Paris property by private sale.  On October
29, the French court denied plaintiffs' application to cancel
defendant's lien on the Paris property.  The Paris property was
sold for 475,000 Euros (approximately $695,970) on February 10,

2009.  Defendant has not received any proceeds from the sale, which are also being held for distribution in accordance with French law.  Defendant claims that it is still owed the full amount of the $85,210 New York Judgment against Mr. Karoon, plus interest and costs incurred in France, totalling more than $100,000 in all.

On July 16, 2009, plaintiffs filed a complaint asserting three claims against defendant.  First, plaintiffs alleged that defendant's efforts to enforce the New York Judgment by levying and executing upon the Paris and Cannes properties violated N.Y. C.P.L.R. § 5208.  Second, plaintiffs alleged that defendant's refusal to release its lien on the Paris property after the sale of the Cannes property constitutes prima facie tort under New York law.  Third, plaintiffs alleged that defendant breached the implied covenant of good faith and fair dealing under New York law by levying and executing against the Paris and Cannes Properties despite the provision in the Legal Fees Stipulation providing that defendant would not levy against the "Escrow Accounts."

On December 18, defendant filed a motion for summary judgment.  Plaintiffs thereafter requested leave to amend the complaint and add the estate of Mr. Karoon as a plaintiff. Plaintiffs' request for leave to amend, which was unopposed by defendant, was granted on April 8, 2010.  On April 16,

plaintiffs filed an amended complaint which asserts the same three claims as the original complaint, but adds the estate of Mr. Karoon as a plaintiff with respect to all three claims.  The amended complaint also includes a new allegation that defendant has proposed a plan for the distribution of proceeds from the sale of the Cannes and Paris properties that does not provide for Mrs. Karoon to receive the 65 percent share of the proceeds to which she claims she is entitled.  The briefing on the summary judgment motion was fully submitted on May 11.

DISCUSSION[1]

Summary judgment may not be granted unless all of the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); see SCR Joint Venture L.P. v. Warshawsky, 559 F.3d 133, 137 (2d Cir. 2009).  The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination, the court must view all facts in the light most favorable to the non-moving party.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Roe v. City of Waterbury, 542 F.3d 31,

---

[1] The parties' briefs assume that New York substantive law governs the issues presented here.  Such implied consent is sufficient to establish the applicable choice of law.  See Arch Ins. Co. v. Precision Stone, Inc., 584 F.3d 33, 39 (2d Cir. 2009).  Accordingly, New York law applies.

35-36 (2d Cir. 2008).  When the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the opposing party must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on the "mere allegations or denials" contained in the pleadings.  Fed. R. Civ. P. 56(e); Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).  That is, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Only disputes over material facts -- facts that might affect the outcome of the suit under the governing law -- will properly preclude the entry of summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); SCR Joint Venture, 559 F.3d at 137.

1.   N.Y. C.P.L.R. § 5208

    The first claim in the amended complaint is that defendant's efforts to enforce the New York Judgment by levying and executing upon the Cannes and Paris properties violated N.Y. C.P.L.R. § 5208 because defendant failed to seek leave from the California probate court to enforce the New York Judgment after Mr. Karoon's death.  Section 5208 provides that during the eighteen-month period following a judgment debtor's death, a creditor is not permitted to execute on the judgment by having

the authorities "lev[y] upon any debt owed to [the debtor] or any property in which he has an interest, nor shall any other enforcement procedure be undertaken with respect to such debt or property," unless the surrogate's court that has probated the will grants leave.  N.Y. C.P.L.R. § 5208; Dulce v. Dulce, 233 F.3d 143, 146 (2d Cir. 2000).

Plaintiffs' § 5208 claim is without merit.  Section 5208 does not apply where, as here, enforcement is sought against a judgment debtor's property located outside of New York.  "[T]he law of New York does not and cannot determine the extent to which property located outside the State is subject to execution by a judgment creditor."  See James v. Powell, 225 N.E.2d 741, 745 (N.Y. 1967).  Plaintiffs' § 5208 claim is therefore dismissed.[2]

2.   Prima Facie Tort

The second claim in the amended complaint for prima facie tort is premised on allegations that:  (1) defendant refused to release the lien on the Paris property after the sale of the Cannes property; and (2) defendant has proposed a distribution plan for the proceeds from the sale of the Paris and Cannes properties that disregards Mrs. Karoon's 65 percent interest in

---

[2] It is unnecessary to address defendant's additional arguments that plaintiffs' § 5208 claim is barred by the doctrine of res judicata and the statute of limitations.

those properties.  Under New York law, there are four elements
to a claim of prima facie tort: "(1) an intentional infliction
of harm; (2) without excuse or justification and motivated
solely by malice; (3) resulting in special damages; (4) by an
act that would otherwise be lawful."  Evergreen Pipeline Constr.
Co. v. Merritt Meridian Constr. Corp., 95 F.3d 153, 161 (2d Cir.
1996); accord Freihofer v. Hearst Corp., 480 N.E.2d 349, 354-55
(N.Y. 1985).  A "plaintiff [must] allege that disinterested
malevolence was the sole motivation for the conduct of which [he
or she] complain[s]."  R.I. Island House, LLC v. North Town
Phase II Houses, Inc., 858 N.Y.S.2d 372, 377 (2d Dep't 2008)
(citing Burns Jackson Miller Summit & Spitzer v. Lindner, 451
N.E.2d 459, 468 (N.Y. 1983)).  "[A] cause of action for prima
facie tort is governed by a one-year statute of limitations."
Russek v. Dag Media Inc., 851 N.Y.S.2d 399, 400 (1st Dep't
2008); see also Havell v. Islam, 739 N.Y.S.2d 371, 372 (1st
Dep't 2002).

       The amended complaint fails to state a claim for prima
facie tort.  While the amended complaint alleges that
defendant's refusal to remove the lien on the Paris property was
"malicious and tortious," and that defendant's proposed
distribution plan was "wrongful," plaintiffs fail to allege any
facts showing that "disinterested malevolence was the sole
motivation" for the conduct of which they complain.  R.I. Island

House, 858 N.Y.S.2d at 377.  Since the amended complaint acknowledges the existence of the debt that Mr. Karoon owed to the defendant and the defendant's possession of an enforceable judgment, the conclusory assertion of malice is inadequate to state a claim.  In addition, the amended complaint fails to describe any special damages as a result of defendant's refusal to remove the lien from the Paris property or its proposed distribution plan.  For this additional reason, plaintiffs' claim for prima facie tort must be dismissed.[3]

3.   Breach of Implied Covenant of Good Faith and Fair Dealing

     The third claim in the amended complaint is for breach of the implied covenant of good faith and fair dealing.  Plaintiffs allege that, by levying and executing upon the Cannes and Paris properties, defendant breached an implied promise in the Legal Fees Stipulation not to levy against the very property which was to be sold to fund the "Escrow Accounts" referenced in the Legal

---

[3] Plaintiffs' claim for prima facie tort based on defendant's refusal to release its lien on the Paris property is also barred by the one-year statute of limitations.  The amended complaint alleges that on March 9, 2007, plaintiffs' counsel wrote to defendant to request that defendant remove the lien on the Paris property and that defendant refused.  Plaintiffs again attempted, unsuccessfully, to convince defendant to remove the lien in March 2008.  Even if plaintiffs' claim accrued on the latter date, it is untimely because plaintiffs did not file the original complaint in this action until July 16, 2009 -- approximately four months after the one-year statute of limitations had expired.

Fees Stipulation.  New York law implies a covenant of good faith
and fair dealing "pursuant to which neither party to a contract
shall do anything which has the effect of destroying or injuring
the right of the other party to receive the fruits of the
contract."  Thyroff v. Nationwide Mut. Ins. Co., 460 F.3d 400,
407 (2d Cir. 2006) (citation omitted).  The implied covenant,
however, "can only impose an obligation consistent with other
mutually agreed upon terms in the contract.  It does not add to
the contract a substantive provision not included by the
parties."  Broder v. Cablevision Sys. Corp., 418 F.3d 187, 198-
99 (2d Cir. 2005) (citation omitted).

     Because Kayvan and Kamran Karoon concede that they are not
parties to the Legal Fees Stipulation, they lack standing to
bring a claim for breach of the implied covenant in their
individual capacities.  These two plaintiffs, however, assert a
claim for breach of the implied covenant of good faith and fair
dealing in their capacities as administrators of Mr. Karoon's
estate.  A decedent's executor or administrator can maintain a
cause of action for breach of contract that the decedent would
have had.  See N.Y. Est. Powers & Trusts § 11-3.1 (McKinney
2008); Jackson v. Kessner, 618 N.Y.S.2d 635, 637-38 (1st Dep't
1994).  Nevertheless, the claim is without merit.

     Plaintiffs argue that the Legal Fees Stipulation includes
an implied promise that defendant would not levy and execute

16

upon the Paris and Cannes properties.  No such promise can be
inferred from the agreement.  The Legal Fees Stipulation states
that "[defendant] shall not levy against the Escrow Accounts, or
disbursements from the Escrow Accounts, to enforce its judgment
in the Plenary Action."  "Escrow Accounts" are defined, however,
as being limited to "certain funds [that] are <u>currently being
maintained</u> . . . subject to the control of the Court in the
Matrimonial Action."  (Emphasis added.)  At the time of the
Legal Fees Stipulation, the proceeds from the sale of the Paris
and Cannes properties were not "currently being maintained" in
the Escrow Accounts.  Indeed, the Legal Fees Stipulation
contains no reference whatsoever to Mr. Karoon's properties in
France.  As such, defendant's promise not to levy against the
Escrow Accounts did not limit defendant's right to levy and
execute against the Paris and Cannes properties to enforce the
New York Judgment.

Plaintiffs next argue that the Legal Fees Stipulation
anticipates the possible sale of the Cannes and Paris
properties, and the subsequent deposit of the proceeds from
those sales into "Escrow Accounts," because it provides that the
"proceeds from the sale of any of the parties' real or personal
properties, whether here or abroad, shall be divided in a manner
determined by [the court in the Matrimonial Action] between
[defendant] and Cox, Buchanan."  Plaintiffs cite this provision

out of context.  While the Legal Fees Stipulation provides that defendant's right to a share of the "proceeds from the sale of any of the parties' real or personal properties, whether here or abroad" for the payment of Mr. Karoon's legal fees would be determined by the court Matrimonial Action, this right is "[i]n addition to any rights which [defendant] may have as judgment creditor in the Plenary Action." (Emphasis added.)  Thus, the Legal Fees Stipulation expressly preserved defendant's rights to enforce the New York Judgment, including the right to levy and execute upon the Paris and Cannes properties.  Indeed, the Legal Fees Stipulation required Mr. Karoon to "execute any documents which . . . may be necessary to enforce the judgment in any jurisdiction worldwide, or to enter judgment in any such jurisdiction."

Lastly, Mrs. Karoon argues that she has standing to assert this claim because she was a third-party beneficiary of the Legal Fees Stipulation.  For the reasons already explained, defendant is entitled to judgment on the merits of this claim. In any event, Mrs. Karoon is not an intended beneficiary of the Legal Fees Stipulation and any incidental benefit she may have received from the agreement is insufficient to create any duty toward her.  See Madeira v. Affordable Hous. Found., Inc., 469 F.3d 219, 251 (2d Cir. 2006) (citation omitted).  Summary judgment is therefore granted to defendant on plaintiffs' claim

for breach of the implied covenant of good faith and fair dealing.[4]

## CONCLUSION

Defendant's December 18, 2009 motion for summary judgment is granted.  The Clerk of Court shall close the case.

SO ORDERED:

Dated:    New York, New York
          May 27, 2010

                              _____
                                   DENISE COTE
                              United States District Judge

---

[4] It is unnecessary to address defendant's additional arguments that plaintiffs' claim for breach of the implied covenant of good faith and fair dealing is barred by the statute of limitations and the doctrine of res judicata and/or collateral estoppel.